IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| RICKY LEE HAMM, | ) | Case No. 15-01826-TOM 7 |
| | ) | |
| Debtor. | ) | |

_____

| | | |
|---|---|---|
| AVADIAN CREDIT UNION, | ) | |
| | ) | |
| Plaintiff, | ) | A.P. No. 15-00092 |
| | ) | |
| vs. | ) | |
| | ) | |
| RICKY LEE HAMM, | ) | |
| | ) | |
| Defendant. | ) | |

_____

## MEMORANDUM OPINION

This adversary proceeding came before the Court on April 4, 2016, for a trial on the Complaint filed by Avadian Credit Union, the Plaintiff, against Ricky Lee Hamm, the Defendant/Debtor.[1] Appearing before the Court were Michael A. Harrison, attorney for Avadian Credit Union; Bradford W. Botes, attorney for Ricky Hamm; Defendant/Debtor Ricky Hamm; P.J. Shackelford, witness for Avadian Credit Union; and Ruth Hamm, witness for Ricky Hamm. This Court has jurisdiction pursuant to 28 U.S.C. sections 1334(b), 151, and 157(a) and the District Court's General Order of Reference Dated July 16, 1984, as amended July 17, 1984.[2]

---

[1] Based on no written objections having been filed and no verbal objections having been voiced at any hearings in this adversary proceeding, all parties and their counsel have implied their consent and thus will be deemed to have consented to entry by the Bankruptcy Court of any and all final orders and judgments in this adversary proceeding.

[2] The General Order of Reference Dated July 16, 1984, as Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:

This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. section 157(b)(2)(I).[3] This Court has considered the pleadings, arguments, evidence, testimony, and the law, and finds and concludes as follows.[4]

## FINDINGS OF FACTS[5]

On September 6, 2014, the Defendant/Debtor Ricky Hamm was involved in a two-car accident wherein he ran a red light at the intersection of Avenue C and 20th Street, Ensley, Alabama, and hit another car. According to the police report from the accident, Mr. Hamm "had an odor of an alcoholic beverage coming from his person and breath [and] was not speaking coherently . . . . " Plaintiff's Exh. C, Alabama Uniform Traffic Crash Report. At trial, Mr. Hamm recounted the events leading to the accident. He explained that on the day of the accident he was depressed over recent events and "didn't want to feel anything;" thus, he stopped to purchase "a fifth" of Jagermeister on the way home from work. He testified that at home, where he was alone, he began to drink. According to Mr. Hamm, he does not know how much he had to drink. He testified that he placed his keys in a drawer by the door so that he could not drive, and believed he had "done everything [he] could to keep from driving that car." However, he also testified that all he remembers after that is reclining on the sofa and the next thing he knew

---

       The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

[3] 28 U.S.C. § 157(b)(2)(I) provides as follows:
    (b)(2)Core proceedings include, but are not limited to-
    . . .
      (I) determinations as to the dischargeability of particular debts[.]

[4] This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052.

[5] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

2

he was in the hospital. Mr. Hamm testified that he does not remember cranking his car, does not remember going through the red light, and does not know where he was going at the time of the accident. Mr. Hamm contends that he pled guilty because an officer had told him he was drunk and he did not question the officer.

According to Mr. Hamm, at the time of the accident he was driving a limited edition 2013 Scion that was his "dream car" which he loved. He testified that he had put the car in car shows and that he had been a member of the "86 club," the members of which went on trips and drove their cars together on the weekend. Mr. Hamm stressed that he did not intentionally cause damage to the Scion and regrets that the damage occurred.

Mr. Hamm admitted that he is an alcoholic. By way of history, he explained he was first diagnosed with depression in the early 1990s. At some point after graduating from high school in 1994 he had enlisted in the Army and suffered an injury during advanced training, a result of which he was sent home with an honorable discharge. After returning home, he had trouble finding a job; between that and dealing with his depression he began to drink heavily. In 2007 he received treatment at Bradford for three or four weeks and joined Narcotics Anonymous,[6] participating in their "twelve-step" program and attending meetings two or more days per week. According to Mr. Hamm, he still attends meetings.

In 2008 Mr. Hamm suffered an injury at work in which his face was crushed by an industrial hammer. Mr. Hamm testified that he had refused pain medication after his three

---

[6] When Mr. Hamm's counsel asked him about treatment programs he participated in outside of Bradford, Mr. Hamm testified that he joined Narcotics Anonymous in 2007 and that he remains a member today. Immediately thereafter his counsel asked if he learned about the twelve-step program while he was at Alcoholics Anonymous, to which Mr. Hamm replied in the affirmative. It is unclear from Mr. Hamm's testimony whether he attended Alcoholics Anonymous meetings, Narcotics Anonymous meetings, or both. Regardless, it is clear that Mr. Hamm has a problem with addiction of which he is aware.

3

reconstructive surgeries as he was concerned that once he started taking the medication he would not be able to stop. He began drinking again after his fiancée left him in 2013; he subsequently sought help and got back into "the program."[7] Mr. Hamm explained that when his father died in 2014 he again experienced depression as he had been neglecting his father, caring more about other things than about him.

The accident involving the 2013 Scion was not Mr. Hamm's first experience with driving while intoxicated. According to Mr. Hamm, he had one prior DUI charge in 1997 to which he had pled guilty. After that incident he was warned by the state court, his friends, and his family as to the dangers of drinking and driving. Mr. Hamm testified he had understood that driving while intoxicated was dangerous, and it was "foreseeable" that injuries to people or property could occur as a result.

Ruth Hamm, Mr. Hamm's mother, testified that she realized her son had a drinking problem after he came home from the Army, as he would stay out late and not listen to her. Ms. Hamm stated that she took her son to Bradford in 2007. According to Ms. Hamm, her son had stopped drinking after his treatment at Bradford. She has no knowledge of his drinking after the 2014 accident occurred. Ms. Hamm emphasized that her son had loved his car and that he had never intentionally caused damage to any vehicle that he has owned. She testified that her son is a hard worker and is honest, and further, that her son knew the dangers of drinking and driving.

P. J. Shackelford, custodian of records at Avadian Credit Union ("Avadian"), testified that Avadian financed Mr. Hamm's purchase of the 2013 Scion in the amount of $34,321.51. *See* Plaintiff's Exh. A, Retail Installment Contract and Security Agreement. Mr. Shackelford testified that after application of the insurance proceeds and the addition of accrued interest, the

---

[7] Mr. Hamm did not specify whether he got back into Alcoholics Anonymous or Narcotics Anonymous

4

deficiency balance on the debt was $13,840.83 as of April 4, 2016. *See* Plaintiff's Exh. H. Mr. Shackelford explained that although Mr. Hamm had GAP insurance coverage, which was purchased at the loan closing to cover the difference between the value of the vehicle and the debt as of the date of loss, no payment was made on the GAP claim because the policy excluded loss incurred in connection with operation of the vehicle by someone under the influence of alcohol or a controlled substance. *See* Plaintiff's Exh. E.

## CONCLUSIONS OF LAW

Avadian contends that the debt owed to it by Mr. Hamm for the principal, interest, and fees remaining after application of the insurance proceeds should be excepted from discharge pursuant to Bankruptcy Code section 523(a)(6), which provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
> . . .
> > (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

11 U.S.C. § 523(a)(6).[8] To have a debt declared nondischargeable pursuant to section 526(a)(6) a creditor must prove the injury was both willful and malicious. *Anglin v. Wallis (In re Wallis)*, AP No. 10-00010, 2011 WL 2357365, at *9-*10 (Bankr. N.D. Ala. Mar. 31, 2011).

According to the Eleventh Circuit Court of Appeals, "a debtor is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury." *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1165 (11th Circuit 1995). As that court explained:

---

[8] Bankruptcy Code section 523(a)(9) provides that debts "for death or personal injury caused by the debtor's operation of a motor vehicle, vessel, or aircraft if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance" are excepted from a discharge entered pursuant to Bankruptcy Code section 1328(b). 11 U.S.C. § 523(a)(9). At issue in this adversary proceeding is property damage, not death or personal injury; thus, section 523(a)(9) is inapplicable.

5

> Congress has been very clear in expressing its intention in section 523(a)(6). The plain language of section 523(a)(6) excepts from discharge debts arising from "willful and malicious injury" rather than "willful and malicious acts which cause an injury." *Eaves v. Hampel (In re Hampel)*, 110 B.R. 88, 93 (Bankr.M.D.Ga.1990); *see also Farmers Insurance Group v. Compos (In re Compos)*, 768 F.2d 1155, 1158 (10th Cir.1985) ("'Willful' modifies 'injury.' Section 523(a)(6) does not except from discharge intentional acts which cause injury; it requires instead an intentional or deliberate injury."). In reenacting this language in the Bankruptcy Reform Act of 1978, both houses of Congress stated that "[u]nder this paragraph 'willful' means deliberate or intentional. To the extent that *Tinker v. Colwell*, 193 U.S. 473[,485, 24 S.Ct. 505, 508, 48 L.Ed. 754 (1904)] held that a less strict standard is intended, and to the extent that other cases have relied on Tinker to apply a 'reckless disregard' standard, they are overruled."

*Id.* at 1164 (citations omitted). Thereafter, the Supreme Court made clear in *Kawaauhau v. Geiger* that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct. 974, 977, 140 L. Ed. 90 (1998).

"'Malicious' means 'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will. To establish malice, a showing of specific intent to harm another is not necessary.'" *Kane v. Stewart Tilghman Fox & Bianchi P.A. (In re Kane)*, 755 F.3d 1285, 1294 (11th Cir. 2014) (quoting *Maxfield v. Jennings (In re Jennings)*, 670 F.3d 1329, 1334 (11th Cir. 2012)); *see also Lee v. Ikner (In re Ikner)*, 883 F.2d 986, 991 (11th Cir. 1989); *Walker*, 48 F.3d at 1163-64. "Put differently, for the purposes of § 523(a)(6), '[m]alice can be implied.'" *Kane*, 755 F.3d at 1294 (quoting *Thomas v. Loveless (In re Thomas)*, 288 F. App'x 547, 549 (11th Cir.2008)). Although reckless disregard will not satisfy the "willful" prong of "willful and malicious" it can satisfy the "malicious" prong. *Woodman v. Carroll (In re Carroll)*, 505 B.R. 74, 80 (Bankr. N.D. Ga. 2014).

6

Avadian contends that there was an "objective substantial certainty of harm" in Mr. Hamm's driving while intoxicated, and as a result the injury to Avadian's collateral caused by Mr. Hamm's conduct is a willful and malicious injury for purposes of section 523(a)(6). In support of its position, Avadian cites to *Miller v. J.D. Abrams Inc. (In re Miller)*, in which the Fifth Circuit Court of Appeals stated "we hold that an injury is 'willful and malicious' where there is either an objective substantial certainty of harm or a subjective motive to cause harm." *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 606 (5th Cir. 1998). The *Miller* court does not analyze "willful" and "malicious" as two separate concepts; in fact, the court notes that "[a]lthough we will ultimately conclude that under recent Supreme Court precedent, "willful and malicious injury' is a unitary concept entailing a single two-pronged test, courts have previously analyzed 'willful' and 'malicious' separately." *See also Williams v. IBEW Local 520 (In re Williams)*, 337 F.3d 504, 509 (5th Cir. 2003) (quoting *Miller*, 156 F.3d at 606) ("The test for willful and malicious injury . . . is condensed into a single inquiry of whether there exists 'either an objective substantial certainty of harm or a subjective motive to cause harm' on the part of the debtor.'"). However, "willful" and "malicious" continue to be independently analyzed in the Eleventh Circuit, as noted in *Figueroa v. Barreto (In re Barreto)*:

> However, many courts, including courts in the Eleventh Circuit, continue to treat the "willful" and "malice" prongs as distinct elements that must be separately established. Therefore, in addition to satisfying the "willful" prong of 11 U.S.C. § 523(a)(6), the Plaintiff must also satisfy the "malice" prong of § 523(a)(6).

*Figueroa v. Barreto (In re Barreto)*, 514 B.R. 702, 714 n.13 (Bankr. S.D. Fla. 2013) (citations omitted). *See also Kane*, 755 F.3d at 1293-95 (analyzing "willful" and "malicious" separately).

Thus, the first question this Court must address is whether Mr. Hamm, by driving while intoxicated, acted "willfully," or in other words, acted in a manner intending to cause injury to Avadian's collateral, or whether such injury was substantially certain to result. Mr. Hamm

7

Case 15-00092-TOM    Doc 21    Filed 07/07/16    Entered 07/07/16 10:25:39    Desc Main
Document      Page 7 of 9

testified that he did not intend to drive after drinking on the day of the accident and that he put his keys inside a drawer so that he would not drive. Mr. Hamm's testimony that he loved the Scion was reiterated by that of his mother. There is no evidence from which the Court could conclude that Mr. Hamm set out to intentionally injure Avadian's collateral, and furthermore, Avadian does not contend that he did. Avadian asserts that due to his prior DUI charge Mr. Hamm knew or should have known that driving while intoxicated is criminal conduct that is extremely dangerous to people and property. In fact, Mr. Hamm admitted he knew that driving drunk was dangerous and that injury was a "foreseeable" result of doing so. However, the risk that injury could occur does not equate to an injury being "substantially certain" to occur. *See Godman v. City of Largo*, No. 8:08-cv-00333-JDW-TBM, 2009 WL 1651524, at * 9 (M.D. Fla. June 10, 2009) ([T]he knowledge and appreciation of a risk, short of substantial certainty, is not the equivalent of intent."). Driving while intoxicated does not always result in injury to person or property, and there is no evidence before the Court from which it could conclude whether injury is substantially certain to result. The Court finds that the "willful" prong of "willful and malicious injury" has not been satisfied. The Court need not address whether the injury was malicious since both prongs must be established before a debt is excepted from discharge under section 523(a)(6).

## CONCLUSION

Mr. Hamm testified that he has struggled with depression and that around the time of the accident he had been left by his fiancé and had lost his father. According to his explanation, he bought alcohol so that he could drink and essentially forget about his problems. Mr. Hamm is an admitted alcoholic who realized the dangers of drinking and driving. He must have contemplated the risk that he would drink and attempt to drive because he took a precautionary

8

measure to prevent it. While Mr. Hamm may not have had an intentional desire to drive while intoxicated and cause injury to his vehicle, he acted at the very least recklessly as he appreciated that injury to property could occur, or perhaps was likely to occur. Congress could have made a debt for injury to property caused by driving while intoxicated nondischargeable as it did for personal injury or death, but for whatever reason it did not; thus the "willful and malicious injury" standard under section 523(a)(6) applies. No matter how wrongful or inexcusable Mr. Hamm's conduct may have been, it has not been established that injury to the vehicle was substantially certain to occur as a result. This Court finds that Avadian has failed to prove that the debt owed to it by Mr. Hamm should be declared nondischargeable under section 523(a)(6). Accordingly, it is hereby

**ORDERED, ADJUDGED, AND DECREED** that the relief sought by the Plaintiff, Avadian Credit Union, to declare certain indebtedness of the Debtor, Ricky Lee Hamm, nondischargeable in accordance with 11 U.S.C. § 523(a)(6) is **DENIED**. It is further

**ORDERED, ADJUDGED, AND DECREED** that the indebtedness of the Debtor, Ricky Lee Hamm, to the Plaintiff, Avadian Credit Union, is **DISCHARGEABLE** and shall be included in the discharge of the Debtor entered in this case by order of this Court.

Dated: July 7, 2016  /s/ Tamara O. Mitchell
TAMARA O. MITCHELL
United States Bankruptcy Judge

TOM/dgm

9

Case 15-00092-TOM    Doc 21    Filed 07/07/16    Entered 07/07/16 10:25:39    Desc Main
Document      Page 9 of 9